# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **FAZAL RAHEMAN** ) | |
|       Petitioner ) | |
|       v. ) | **CIV. NO.  05-CV-11568-PBS** |
| ) | |
| **UNITED STATES OF AMERICA** ) | |
|       Respondent ) | |

### Government's Opposition to Petitioner to Vacate Judgment Under 28 U.S.C. § 2255

The United States of America, by and through Assistant United States Attorney John T. McNeil, respectfully submits this opposition to Fazal Raheman's ("Raheman") petition pursuant to 28 U.S.C. § 2255.  For the reasons set forth herein, the government requests that the petition be denied with prejudice.

### Procedural Statement

On July 9, 2001, Raheman was charged in a complaint with international parental kidnapping in violation of 18 U.S.C. § 1204.  [D.1] [1]  On the same date he was arrested in the District of Arizona.  Raheman was subsequently indicted by a grand jury on July 25, 2001, on the same charge. [D.3].   The grand jury returned a Superseding Indictment on January 16, 2002,

---

[1] Citations are as follows.  The citation "[D._]" refers to a docket entry.  Unless otherwise noted, references to the docket numbers are to the numbers in United States v. Fazal-ur-Raheman Fazal (a/k/a) Fazal Raheman, Crim. No. 01-CR-10274-PBS.  Citations to the pretrial conference held on February 11, 2002, are to "[Pretrial Conf. at ___]."  Citations to the sentencing hearing held on September 9, 2002, are to "[Disposition at ___]."  There were seven days of trial.  However, for several of those trial days, the transcripts have been produced in two or more volumes.  For instance, the fifth day of trial has been produced in three separate volumes.  Therefore, citations the transcripts are to the day of trial, the page of the transcript, and witness's whose testimony is contained in that transcript; "[2:45 (Ali)]," for example, refers to page 45 of the second day of trial in the transcript containing Ms. Ali's testimony.  Other transcript citations are to the date of the hearing and page number; "[Hr. 7/21/04 at ___]."

again charging him with international parental kidnapping in violation of 18 U.S.C. §1204, and

adding a second count of wiretapping in violation of 18 U.S.C. §2511. [D.61].    Raheman was

convicted on both counts of the Superseding Indictment on March 6, 2002, after a seven day jury

trial. [D.122].    He was sentenced on September 9, 2002, to three years of imprisonment to be

followed by three years of supervised release, and ordered to cooperate "forthwith" in the return

of the children to the United States. [D.168, 171].

Raheman appealed his conviction and sentence. The First Circuit affirmed the

conviction, but reversed a portion of his sentence and remanded for resentencing. See United

States v. Fazal-Ur-Raheman-Fazal, 355 F.3d 40 (1st Cir. 2004), cert. denied, 125 S. Ct. 173

(2004) ("Raheman I").[2]

The district court entered an Amended Judgment on February 12, 2004, [D.221], a

Second Amended Judgment on February 23, 2004, [D.268], and a Third Amended Judgment on

April 15, 2004. [D.236]. On September 15, 2004, the court revoked Raheman's supervised

release after an evidentiary hearing. [D.256; D.257]. Raheman was sentenced on October 18,

2004, to one year and one day of incarceration for violating his supervised release, with no

supervised release to follow that period of incarceration. [D.260].

Raheman appealed the judgment of violation of his supervised release. On May 11,

2005, the First Circuit affirmed the judgment in an unpublished *per curiam* opinion. United

States v. Raheman-Fazal, 130 Fed.Appx. 485 (1st Cir. 2005)(unpub.)("Raheman II").

---

[2] On December 23, 2002, Raheman filed a petition for writ of habeas corpus. See
Raheman v. United States, Civ. No. 02-12484-PBS. The government filed an extensive response
to that petition. On May 14, 2004, the district court dismissed that petition without prejudice.
[Docket entry 5/14/04].

Raheman filed the instant petition on July 22, 2005. Raheman was released from federal custody one week later, on or about July 29, 2005, and taken into the custody of Immigration and Customs Enforcement. Raheman was deported to India on September 19, 2005.

**Section 2255 Review**

Section 2255 of Title 28, United States Code, provides that:

A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255.

Section 2255 "provides for post-conviction relief in four instances, namely, if the petitioner's sentence (1) was imposed in violation of the Constitution, or (2) was imposed by a court that lacked jurisdiction, or (3) exceeded the statutory maximum, or (4) was otherwise subject to collateral attack." David v. United States, 134 F.3d 470, 474 (1st Cir. 1998)(citing Hill v. United States, 368 U.S. 424, 426-427 (1962)). The petitioner bears the burden of establishing the need for Section 2255 relief. David v. United States, 134 F.3d at 474.

In this matter Raheman claims that his trial and appellate counsel were constitutionally ineffective in two respects: first, counsel failed to claim that he was "actual[ly] innocent" of international parental kidnapping because they failed to claim that the district court had no case or controversy before it at the time he was charged with this crime [Petition at 1, 3-4 ("Ground Two")]; and second, he claims that trial and appellate counsel failed to assert that Raheman was "actually innocent" of the wiretapping charge because Ms. Ali used a cordless telephone, and, Raheman asserts, there can be no felonious interception of a cordless telephone under 18 U.S.C.

3

§2511(a). [Petition at 1, 8-9 ("Ground Four")]. Raheman also claims that his constitutional

rights were violated by the "district court's reversal of full faith and credit to Indian custody

proceedings," [Petition at 1, 3-4 ("Ground One")], and that he was denied due process because

he did not have a "de novo" review of his *pro se* claims that the district court was without a case

or controversy at the time he was charged in this matter. [Petition at 1, 7-8 ("Ground Three")].

<b>ARGUMENT</b>

**I.      Raheman Has Failed to Meet His Burden of Establishing That Counsel Were
Ineffective and Actual Prejudice Resulted.**

**A.  Strickland Standard**

In <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), the Supreme Court articulated a two-

part test to determine whether, in a particular case, an attorney's performance fell below the

constitutionally required minimum.  First, the performance must be shown to have been

deficient, and second, the deficient performance must be shown to have prejudiced the defense.

<u>Id.</u> at 686-87.

The First Circuit in <u>Phoenix v. Matesanz</u>, 233 F.3d 77, 81 (1st Cir. 2000) reiterated the

<u>Strickland</u> standard:

> First, the defendant must show that counsel's performance was deficient.  This
> requires showing that counsel made errors so serious that counsel was not
> functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.
> Second, the defendant must show that the deficient performance prejudiced the
> defense.  This requires showing that counsel's errors were so serious as to deprive
> the defendant of a fair trial, a trial whose result is reliable.

<u>Phoenix v. Matesanz</u>, 233 F.3d at 81 (quoting <u>Williams v. Taylor</u>, 529 U.S. at 390, quoting

<u>Strickland v. Washington</u>, 466 U.S. at 687).

Raheman bears the burden of proof, by a preponderance of the evidence, on both parts of

4

this test. See Cofske v. United States, 290 F.3d 437, 441 (1st Cir. 2002); Scarpa v. DuBois, 38 F.3d 1, 8 (1st Cir. 1994).  The test has been characterized as "highly demanding." See Kimmelman v. Morrison, 477 U.S. 365, 383 (1986); see also Lema v. United States, 987 F.2d 48, 51 (1st Cir. 1993) ("A defendant bears a very heavy burden on an ineffective assistance claim.").  A reviewing court "must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance; that is, Raheman must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Strickland, 466 U.S. at 689 (quoting Michel v. Louisiana, 350 U.S. 91, 100-01 (1955)); Lopez-Nieves v. United States, 917 F.2d 645, 649 (1st Cir. 1990).  "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland v. Washington, 466 U.S. at 686.  Moreover, in applying the test a court should bear in mind that the Sixth Amendment "does not guarantee a defendant a letter-perfect defense or a successful defense," United States v. Natanel, 938 F.2d 302, 309 (1st Cir. 1991), but only "a fair trial and a competent attorney," Engle v. Isaac, 456 U.S. 107, 134 (1982).  Simply put, "in itself, dreary lawyering does not offend the Constitution." Scarpa, 38 F.3d at 8.

With respect to Raheman's burden to prove prejudice from the alleged ineffective assistance, it is incumbent upon him to demonstrate a "'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Phoenix v. Matesanz, 233 F.3d at 81 (quoting Williams v. Taylor, 529 U.S. at 390)).

B.     **Defense Counsels' Representation Substantially Exceeded the Strickland Standard.**

Raheman cannot prove by a preponderance of the evidence that counsel were deficient in their representation. With respect to trial counsel, the record reflects that from the very outset of this case, defense counsel aggressively and effectively represented Raheman. For instance, despite the fact that Raheman was an overwhelming flight risk, defense counsel pressed hard for Raheman's pretrial release on conditions. [D.6, 8, 12-18, 21, 25]. There were several detention hearings before Chief Magistrate Judge Collings on this issue, at which defense counsel proffered alternatives to pretrial detention, including a third party custodian and a secured bond. Id.

At the discovery stage of the case, defense counsel also ably represented Raheman. Despite receiving extensive discovery in accordance with the local rules on automatic discovery, defense counsel sought additional discovery from the government and pressed those requests in several discovery motions. [D.34, 35, 36, 37]. When those motions were denied by Chief Magistrate Judge Collings, defense counsel moved to reconsider. [D.49, 50, 51].

Defense counsel also effectively represented Raheman during the pretrial motion phase of the case. Defense counsel filed an extensive pretrial motion to dismiss the case, which included a constitutional challenge to the international parental kidnapping statute and was based in part on Massachusetts probate law. [D.45, 55, 57]. Defense counsel also filed six motions *in limine* regarding trial evidence [D.70, 71, 72, 73, 104, 105], and responded to numerous motions *in limine* filed by the government. [See e.g. D.80, 81, 82, 87].

Defense counsel also sought several means of presenting evidence from Indian witnesses at trial, including submitting a motion for videotaped testimony. [D.73]. When that motion was

6

rejected, defense counsel obtained funds to bring witnesses from India to the United States to

testify at trial, and successfully arranged for them to appear. [D.84].  Defense counsel also

obtained documentary evidence from India, including warrants issued for Ms. Ali's arrest. [2:10-

13 (Ali); 4:45-52 (Ali); 5:7-12 (Ali)].  Defense counsel researched relevant Indian law related to

the charges pending against Ms. Ali.  Id.   She also procured a translator to review the evidence

from India and ultimately offered into evidence the testimony of that translator. [D.85; 7:94-127

(Ramlackhan)].

        In the pretrial phase, defense counsel also sought and obtained subpoenas for telephone

records and bank records. [D.66, 67].  Relevant portions of those documents were ultimately

employed at trial. [See e.g. 2:101-104 (Schneider), 3:157-158 (Ali), 4:64-71(Ali)].

        Moreover, prior to trial, defense counsel submitted voir dire questions, a witness list,

exhibit list and jury instructions. [D.97, 98, 99, 100].  Counsel also submitted supplemental jury

instructions during the trial as the issues crystalized.[3]   The original and supplemental

instructions highlighted the defenses asserted at trial, including but not limited to, that the Indian

court orders constituted an affirmative defense, that Raheman had a right to take his children out

of the Commonwealth under state law, that the Massachusetts court orders had been mooted by

Ms. Ali's departure from Massachusetts, that knowledge of wiretapping can be used to imply

consent, and that certain spousal communications are exempt from the federal wiretap statute.

[D.97; Exhibit 2].   The proposed instructions also addressed the complex confluence of

---

        [3] The supplemental jury instructions do not appear to have been docketed in this case.  A
copy is attached as Exhibit 1.  Notably, counsel requested instructions on the absence of the
Massachusetts' continuing jurisdiction and the limited validity of the Massachusetts court orders.

Massachusetts probate law and the federal law under 18 U.S.C. § 1204. [D.97 at Proposed Instruction 19.]

During jury selection, defense counsel (and the government) sought to insure that no juror harbored any prejudice against Muslims or individuals of Indian descent. Defense counsel submitted voir dire questions on the subject and actively participated in the voir dire process. [D.98].

At trial, defense counsel made a detailed opening statement, presenting a cogent theory of the case, by explaining that Raheman left the country with his children to see his ill mother in India [1:76], and by directly and harshly attacking the credibility of Ms. Ali. [See e.g. 1:78-80]. Defense counsel cross-examined each of the government witnesses, reserving particular emphasis on the cross-examination of Ms. Ali. Defense counsel examined Ms. Ali over three trial days, attacking the substance of her testimony and her credibility.

Through cross-examination of government witnesses, defense counsel also laid the foundation for, among other things, Raheman's claim that he left the United States with the children as part of a medical emergency [See e.g. 2:37, 52 (Schneider); 5:67-68 (Ali)], that Ms. Ali knew that Raheman was leaving for India and chose not to go [2:49-51 (Schneinder), 3:157-158 (Ali)], and that Ms. Ali and Mr. Iqbal were aware of, if not consented to, having their calls recorded [5:20 (Iqbal)].

Defense counsel also moved for directed verdict at the close of the government's case, and argued that motion before the Court. [D.113, 114, 115]. Defense counsel argued that the applicable law allowed Raheman to take his children from the Commonwealth in the absence of an order prohibiting him from doing so [6:135, 137-138], that the government failed to produce

the original wiretap tapes and that, as a result, the wiretap count should be dismissed [6:143], and that the government failed to establish that there was no consent to the tapping and that the federal wiretap statute does not cover spousal communications. [6:144].   When the motion was denied, defense counsel called several witnesses, to develop Raheman's claim that he took the children to India because of a medical emergency [5:3-40  (Sernaik)], to establish that Ms. Ali intended to manipulate charges filed with the Cambridge Police to her advantage in the child custody negotiations in the United States [7:37-44 (Burke); 1:80-81 (opening stmt.)], and to establish that Ms. Ali and Mr. Iqbal consented to the recording of their intimate telephone calls. [7:55-65 (Hart); 7:77-87 (Shahzad); 7:93-127 (Ramlackhan)].   During the government's case and through defense witnesses, defense counsel offered into evidence numerous exhibits ranging from documents filed by Ms. Ali in the Middlesex Probate Court and Nagpur Family Court, portions of documents filed by Raheman in the Nagpur Family Court, telephone records, portions of tape recordings of Ms. Ali and Mr. Iqbal, and other correspondence. [Admitted Exhibit List].

During the charge conference, and at other points during the trial, defense counsel pressed for jury instructions which supported Raheman's theories that he acted within his lawful rights in taking the children from the United States, that he obtained valid Indian court orders when he arrived in that country which acted as an affirmative defense, and that any wiretap was the product of implied consent. [See, e.g. 6:196-197 (arguing federal law incorporates state law on parental rights); 6:206-207 (request that Court find Indian orders valid); 6:222 (arguing for consent instruction)].

In her closing argument, defense counsel argued a range of issues, asserting that

Raheman had a lawful right to take his children from the Commonwealth [7:33, 45 (closing argument excerpt)] and that Raheman left the country with his children because his mother was ill [7:36 (closing argument excerpt)]. As she did on cross-examination, defense counsel also attacked Ms. Ali's credibility and asserted that there was no way to find Raheman guilty if the jury did not believe her. [See, e.g. 7:35-36 (lying about telephone calls); 7:39-40 (lying about whether she knew that Raana Ilyas was in the U.S.); 7:45 (arguing Ms. Ali only witness to important events and jury should not credit her testimony)].

After the jury returned a verdict of guilty, defense counsel moved for a judgment of acquittal. [D.126]. In that motion, defense counsel argued that under state law he validly removed his children from the United States and this act, and his subsequent retention of the children, was validated by a legitimate Indian court order. Id. Counsel also argued that the government failed to introduce evidence of the mother's parental rights. Id. With respect to Count II of the Superseding Indictment, counsel argued that the government failed to establish lack of consent to the recordings. Id.

Raheman also played an extraordinarily active role in defending himself. Raheman filed supplemental motions to dismiss the case and for judgment of acquittal, which he appears to have researched on his own. [See, e.g. D.55, 57, 129, 130, 131]. Many of the pretrial and post-trial pleadings had Raheman's mark upon them. Moreover, during trial, and particularly during Ms. Ali's cross-examination and the presentation of defense witnesses, defense counsel consulted constantly with Raheman. It is apparent from these pleadings and the activities in the courtroom, that much of what counsel did was guided by Raheman himself. [See, e.g. 6:183 (Court's observations that defendant deeply involved in own defense)]. If Raheman's

10

supplemental filings on the pretrial motion to dismiss are representative of his efforts to guide

his defense, it may be that his efforts hampered, rather than assisted in, counsel's efforts to

defend him.

With respect to appellate counsel, the record reflects that he pressed constitutional,

statutory, evidentiary, and sentencing issues on appeal in a 78 page brief (the word limit was

enlarged on counsel's motion), and 36 page reply brief.  Through appellate counsel's effort,

Raheman's sentence was vacated and remanded to the district court.  A review of these briefs

reflect a consistent and conscientious effort to represent Raheman on appeal.

In summary, any claim of ineffective assistance of counsel needs to be made with

reference to the extensive efforts of trial counsel to press legal arguments and introduce evidence

in support of Raheman's case, as well as to Raheman's own efforts at guiding his defense which

may have ultimately harmed his defense.  Such claims must also be made with reference to the

numerous issues argued by appellate counsel.  Defense counsels' efforts throughout this case, as

outlined above, substantially exceeded the <u>Strickland</u> standard.  Given these extensive efforts,

defendant cannot establish that "counsel made errors so serious that counsel was not functioning

as the 'counsel' guaranteed by the Sixth Amendment." <u>Phoenix v. Matesanz</u>, 233 F.3d at 81.

**C.     <u>Raheman Has Not Met His Burden of Establishing Prejudice on the Parental
        Kidnapping Count</u>**

Raheman's convoluted argument that the district court was divested of jurisdiction to

hear this criminal case because neither Ms. Ali, nor he, nor the children lived in the

Commonwealth of Massachusetts after 1999, has squarely rejected by the First Circuit in

<u>Raheman II</u>, 130 Fed.Appx. 485 (1st Cir. 2005)(unpub.).  The Court concluded:

To the extent Raheman argues that the federal courts somehow have been

divested of jurisdiction, the argument is specious. Raheman has been convicted of a federal crime, and that conviction was affirmed. See United States v. Raheman, 355 F.3d 40 (1st Cir.2004) ("Raheman I"). The federal courts have ongoing jurisdiction over violations of supervised release. To the extent Raheman is saying his acts did not constitute a federal crime in the first place, the time for making such an argument is long past; and in any event, the argument was rejected by this court in Raheman's first appeal. See id. at 46-49. It still is without merit.

130 Fed.Appx. at 486.[4]  Because the First Circuit has squarely rejected Raheman's claim that state custody law divested this court of jurisdiction to consider an indictment charging him with international parental kidnapping, Raheman cannot demonstrate that his defense was prejudiced by the acts of his counsel, and his argument also fails on the second prong of Strickland.[5]

### D.    Raheman Has Not Met His Burden of Establishing Prejudice on the Wiretapping Count

Raheman also cannot establish that he has suffered any prejudice from counsels' failure to raise his current claim that he was actually innocent of felonious wiretapping in violation of 18 U.S.C. §2511(1)(a).  He argues in his petition that because Ms. Ali only had a cordless

---

[4]  Raheman raised this jurisdictional argument in Raheman I and it was summarily rejected.  See Leave to File Pro Se Reply Brief (Appeal No. 02-2215)(docketed 7/3/03), "Claim I," "Claim II," and "Claim V".  "Raheman has also raised several *pro se* arguments, each of which we have considered.  Because these arguments are without merit, we summarily reject them."  Raheman I, 355 F.3d at 44 n.2.

[5]  In the event that this court decides to review this claim on the merits again, it is readily apparent that Raheman's jurisdictional argument has no basis in law or fact.  In the first instance, whether or not the Commonwealth retained jurisdiction to determine the custody of Raheman's children after he kidnapped them to India is irrelevant to whether Raheman can be subsequently charged and prosecuted for a violation of 18 U.S.C. §1204.  So long as Ms. Ali had parental rights at the time Raheman kidnapped the children to India, a subsequent charge of parental kidnapping may be brought and a district court has jurisdiction to hear such a case.  See Raheman I, 355 F.3d at 46, 55; 18 U.S.C. §3231.  Secondly, the Middlesex Probate Court has repeatedly rejected Raheman's claim that it lost jurisdiction over the children by virtue of Raheman's criminal removal of the children to India.  As recently as April 2004, the Middlesex Probate Court reaffirmed its continuing jurisdiction over their custody. [D.254  at Exhibit 9 (certified copy of Probate Court denial of Raheman's motion to dismiss)].

telephone and "her residence never had a landline phone," he could not have been convicted of violating 18 U.S.C. §2511(1)(a), but was only culpable of violating the misdemeanor or civil infractions provisions of 18 U.S.C. §2511(4)(b)(i) and (ii) .[6]

First, this argument must be summarily rejected because it is offered without any factual support. His petition is not supported by an affidavit or any reference to a reliable factual

---

[6] During the relevant time period, Section 2511(4) read in pertinent part:

> (a) Except as provided in paragraph (b) of this subsection or in subsection (5), whoever violates subsection (1) of this section shall be fined under this title or imprisoned not more than five years, or both.

> (b) If the offense is a first offense under paragraph (a) of this subsection **and** is not for a tortious or illegal purpose or for purposes of direct or indirect commercial advantage or private commercial gain, **and** the wire or electronic communication with respect to which the offense under paragraph (a) is a radio communication that is not scrambled, encrypted, or transmitted using modulation techniques the essential parameters of which have been withheld from the public with the intention of preserving the privacy of such communication, then -

> **(i)** if the communication is not the radio portion of a cellular telephone communication, a cordless telephone communication that is transmitted between the cordless telephone handset and the base unit, a public land mobile radio service communication or a paging service communication, and the conduct is not that described in subsection (5), the offender shall be fined under this title or imprisoned not more than one year, or both; and

> **(ii)** if the communication is the radio portion of a cellular telephone communication, a cordless telephone communication that is transmitted between the cordless telephone handset and the base unit, a public land mobile radio service communication or a paging service communication, the offender shall be fined under this title.

This provision was amended in 2002.

13

record.[7]  Second, even if he could establish that Ms. Ali was speaking on a cordless telephone in

her apartment, the uncontroverted evidence at trial was that Raheman tapped her telephone by

attaching a recording device to the wires of her telephone in the basement of her apartment,

rather than intercepting the radio transmission between the cordless handset and the base unit. [8]

    The lesser penalties set forth in 18 U.S.C. §2511(4)(b)(i) and (ii) relate exclusively to

intercepted radio communications, and specifically to the interception of "a cordless telephone

communication that is transmitted between the cordless telephone handset and the base unit."  18

U.S.C. §§2511(4)(b)(i) and (ii).  Thus, regardless of whether Ms. Ali was speaking on a cordless

telephone, the overwhelming and unassailable evidence in this case was that Raheman

intercepted the calls by tapping the landline in Ms. Ali's basement telephone distribution box

rather than intercepting radio communications.  As such, his conduct was readily punishable as a

felony offense pursuant to 18 U.S.C. §2511(1).  See McKamey v. Roach, 55 F.3d 1236, 1239 -

1241 (6th Cir. 1995)(discussing the absence of protection for only the radio portion of a cordless

---

    [7]  Even if Raheman were to execute and submit such an affidavit, the Court should have
grave concerns with its credibility.  This Court has already concluded in Raheman's original
sentencing that he lied to the Indian Court to obtain custody orders there. [D.172 at 3].   In
addition, in revoking his supervised release, the Court has concluded that he lied to the Indian
Court in the summer of 2004 regarding his ability to see and care for his children if they were
returned to the United States. [Hr. 9/15/04 at 8].

    [8]  At trial, the government offered into evidence a series of admissions by Raheman, in
sworn documents filed with an Indian court, which overwhelmingly established his guilt on the
wiretapping count. [3:49, 56-57 (Ali); Trial Exhibits 18, 19, 20].  He admitted in those
documents that: he recorded the calls by placing a voice-activated recording device in the
distribution box for Ms. Ali's telephone in the basement of Ms. Ali's apartment [3:51 (Ali); Trial
Exhibit 18 ("The petitioner attached a tape recording instrument to the telephone No. 8689826 in
said distribution box of telephone lines in the basement area . . ."]; he concealed the recording
device in the basement [3:52 (Ali); Trial Exhibit 18]; he described how the recording device
worked and the manner in which he operated it [3:53-54 (Ali); Trial Exhibit 18]; and he recorded
more than 100 hours of Ms. Ali's conversations [3:58 (Ali); Trial Exhibit 20].

14

telephone conversation prior to 1994 amendments to Title III, and the 1994 amendments); Peavy v. WFAA-TV, Inc., 221 F.3d 158, 165 (5th Cir. 2000)(exempted only the radio portion of cordless telephone call);  H.R.Rep. No. 827, 103rd Cong., 2d Sess. 10 (1994), *reprinted in* 1994 U.S.C.C.A.N. 3489 (explaining that the only portion of a cordless telephone call exempted was the radio portion).[9]

## II.    Raheman Cannot Establish a Constitutional Violation Associated with the Court's Alleged "Reversal of Full Faith and Credit to Indian Custody Proceedings."

Raheman claims that his rights under the Fifth and Seventh Amendments to the Constitution have been violated by this Court's alleged decision to reverse itself on an earlier decision to grant full faith and credit to the custody proceedings in the Nagpur Family Court. This claim should be summarily rejected because Raheman failed to raise this claim in his direct appeal and has therefore procedurally defaulted it.  See Massaro v. United States, 538 U.S. 500, 503-04 (2003)("claims not raised on direct appeal may not be raised on collateral review").  In order to overcome this procedural default, Raheman must establish either: 1) cause and actual prejudice under United States v. Frady, 456 U.S. 152, 167 (1982); or 2) actual innocence under Bousley v. United States, 523 U.S. 614, 622 (1998).  Since Raheman has not demonstrated his innocence, nor demonstrated cause for failing to raise the issue in his appeal and prejudice, the Court should summarily reject this argument.

---

[9] Even if Raheman could establish that only the radio portion of the call was intercepted, he still could not establish prejudice as required by Strickland.  In order to successfully assert this mitigating factor, he would also have to establish that the recording was not for a "tortuous or illegal purpose." 18 U.S.C. §2511(4)(b); Raheman I, 355 F.3d at 52-53 (determining that misdemeanor and infraction provisions were mitigating factors which the government was not required to prove to a jury).  Since he recorded the calls as part of his plan take his children from their mother, Raheman cannot establish that he recorded these calls for a purpose which was not tortuous or illegal.

Even if the Court were to reach the merits of this argument, it is readily dispatched. Raheman's entire argument is premised on the notion that the district court concluded that the custody proceedings he initiated in India were compliant with the Uniform Child Custody Jurisdiction Act ("UCCJA"), 9 U.L.A. 111, et seq. (Master ed. 1979), and that the orders of custody entered in the Nagpur Court should be given full faith and credit by the courts in the United States.  This assertion is plainly wrong.  In the first judgment in this case this Court concluded that Raheman's "fraudulent misrepresentations [to the Indian court] and the criminal conviction for international child kidnapping provided persuasive support for the government's argument that the Indian orders would be invalid under the [UCCJA and Hague Convention]." [D.172 at 3].  In subsequent hearings, this Court repeatedly held that the children were to be brought back to the Commonwealth so that their custody could be decided in this country rather than in India.  [Hr. 4/15/04 at 41 (". . . these children belong in the United States for a resolution of custody); Hr. 7/21/04 at 23-24 ("I just have a vested interest in making sure that the jurisdiction of this Court system is protected and that the custody proceedings take place in probate court here.  And so, anything that will bring the children back so that the parties can have a fair contest in American courts is really what I am interested in."); Hr. 9/15/04 at 7 (". . . my main goal throughout has been for the return of the children so the Middlesex Probate Court could resolve the custody issue."].

Thus, while the district court did not specifically declare the Indian court orders invalid, it never concluded, as Raheman now asserts, that it found the orders compliant with the

16

UCCJA.[10]  Nor has this Court ever decided to give the Indian court orders full faith and credit.

In fact, the entire premise of requiring Raheman to return his children to this country was so that

the Middlesex Probate Court could resolve the outstanding issues of custody.  [Id.].

       The district court could not reverse itself on a grant of full faith and credit because it

never gave the Indian custody proceeding full faith and credit in the first place.  Therefore,

Raheman's arguments under the Fifth and Seventh Amendments must be rejected.

### III.    Raheman Cannot Establish a Due Process Violation Associated with the Review of his *Pro Se* Claims

       Raheman asserts that his due process rights were violated because he has never been

given *de novo* review of the various legal claims he has raised in his *pro se* briefs.  In the first

instance, this claim should be rejected because he failed to raise this due process claim in either

---

    [10]    Raheman has claimed at various points in his post-conviction litigation that this Court concluded that he has been in lawful retention of the children since December 2, 1997.  This Court never reached such a conclusion.  The language in the jury instructions upon which Raheman has relied over the years was the result of a compromise reached during the charge conference which was designed to simplify for the jury the complex intersection of the removal, the retention and whether the Indian court's *ex parte* order qualified as an affirmative defense to the retention under 18 U.S.C. §1204(c)(1).  [6:158-160].

    The government and Raheman agreed that he had no affirmative defense to the removal of the children or to his retention before December 2, 1997, because there were no Indian orders in place at the time.  [6:158-160].  After December 2, 1997, he would only have an affirmative defense if the *ex parte* Indian order was valid under the UCCJA.  However, the validity of that order was in part dependent on whether the jury concluded that Raheman was guilty of the unlawful removal.  If the jury concluded that he unlawfully removed the children, then any subsequent Indian orders would be invalid as a matter of law under the UCCJA because the orders were obtained through fraud on the Indian court and were sought by a litigant with unclean hands.  See UCCJA §§1(a)(5), (8).  [D.172 at 3].

    Because the availability of a defense under §1204(c)(1) to the retention of the children was closely tied to a jury verdict on the removal, the parties and the district court struggled with drafting instructions on the affirmative defense.  [6:147-162].  Ultimately, the government agreed to an instruction which focused on the first four days of retention in order to avoid overly complex instructions on the affirmative defense.  [6:158-160].

of his appeals.  See *supra* at 15.

This argument must also be rejected on the merits.  With respect to the *pro se* arguments he raised on his first appeal, those claims were reviewed on the merits and rejected.  "Raheman has also raised several *pro se* arguments, each of which we have considered.  Because these arguments are without merit, we summarily reject them."  Raheman I, 355 F.3d at 44 n.2.

With respect to the *pro se* arguments raised in his second appeal, including his jurisdictional claims and claims based on Massachusetts probate law, those claims were reviewed *de novo* on the merits and were summarily rejected as well.  Raheman II, 130 Fed.Appx. at 486 (*pro se* claims would fail "under any standard of review").

Thus, since his *pro se* jurisdictional claims and claims based on Massachusetts probate law have been given multiple reviews in this Court and the Court of Appeals, he cannot establish a deprivation of due process with respect to these claims.[11]

### Conclusion

For the reasons set forth above, the government requests that the Raheman's petition pursuant to 28 U.S.C. § 2255 be denied with prejudice.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

---

[11]  Not only has this Court and the First Circuit reviewed and rejected Raheman's jurisdictional arguments, but the Middlesex Probate Court has rejected his attempts to truncate that court's jurisdiction over his children. [D.254  at Exhibit 9].  Raheman's continued assertion of this claim – and his continued assertion that this Court granted full faith and credit to the orders of the Nagpur Family Court – has become more than frivolous.  This Court should consider whether sanctions should be imposed on Raheman and his agent in the United States for continued pursuit of these arguments.

Date: September 20, 2005                 By: ___John T. McNeil___
                                             JOHN T. MCNEIL
                                             Assistant U.S. Attorney

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

\* \* \* \* \* \* \*

UNITED STATES OF AMERICA,
                    Plaintiff,                    \*

                                                  \*

              v.                          CRIMINAL NO. 01-10274-PBS

                                                  \*

FAZAL RAHEMAN,
                    Defendant.                    \*

\* \* \* \* \* \* \*

## SUPPLEMENTAL REQUEST FOR INSTRUCTIONS TO THE JURY

Now comes the defendant in the above-entitled matter and requests that, in addition to those requests previously filed by him, that the following instructions be given to the jury.

-28-

## REQUEST NO. 20 (With Authority)

The defendant is charged in Count II with violating the Wiretap Statute. In order for the government to convict the defendant of this charge, it must prove beyond a reasonable doubt that:

> 1. the defendant intercepted a wire, or oral
>
>    or electronic communication; and,
>
> 2. that the defendant did so without the
>
>    consent or knowledge of one of the
>
>    parties to the communication.

Consent or knowledge in this instance can be implied. Implied consent in this context is "consent in fact" which is inferred from surrounding circumstances indicating that the party knowingly agreed to the surveillance.

For example, when a person knowingly proceeds with a telephone call after knowing that their calls may be tape-recorded, consents to the interception. *Griggs-Ryan v. Smith*, 904 F.2d 112 (1st Cir. 1990)

Therefore, in order to convict the defendant of violating the wiretap statute, you must be convinced beyond a reasonable doubt that none of the parties to the interception knew that they were being intercepted.

## REQUEST NO.25

Before considering whether the Orders obtained by the defendant in the Indian Court constitute the complete defense under the Uniform Child Custody Jurisdiction Act, you must first consider whether they leave you with a reasonable doubt that the government has proven that the defendant had the requisite state of mind required for conviction.

That is, you may consider the Orders of the Indian Court in order to determine whether the defendant retained the children outside of the United States with an intent to obstruct the lawful exercise of parental rights of their mother. If, after considering these orders, you find that the government has failed to prove beyond a reasonable doubt that the defendant retained the children in India unlawfully, you must find him not guilty.

## INSTRUCTION NO. 26

Under the Uniform Child Custody Jurisdiction Act, the defendant must be acquitted if the government has failed to prove beyond a reasonable doubt that the defendant did not act under a valid court order issued by the Indian Court.

The the Indian Court Orders are valid under the act if:: 1) the children and at least one contestant had significant connections with India and there was available in India substantial evidence concerning the children's present or future care, protection and training or no other state has jurisdiction because while they had lived in Massachusetts for 6 months preceding the filing of the custody request, that state did not qualify as having substantial evidence concerning their present or future care; 2)Ms. Ali submitted to the jurisdiction of the Indian Court; 3)all of the allegations of misconduct by the Petioner in his removal of the children from Massachusetts were litigated in the Court in India and that Court chose, as is permitted under Section 8 of the Uniform Child Custody Jurisdiction Act, to exercise jurisdiction under Section 8(a).

## INSTRUCTION NO. 27

Under the Uniform Child Custody Jurisdiction Act, the defendant must be acquitted if the government has failed to prove beyond a reasonable doubt that the defendant was not acting under a valid court order issued by the Indian Court.   I instruct you that the orders obtained by the defendant in India were valid under the Uniform Child Custody Jurisdiction Act.

## INSTRUCTION NO.28

The law provides that the custody of children should be determined by certain rules.  Massachusetts courts have ruled that once the children, and the contestants to the custody dispute leave the jurisdiction of Massachusetts and reside elsewhere,  all custody orders previously rendered by Massachusetts Courts are moot.  Massachusetts declines to accept continuing jurisdiction.  *Crecenti v. Weiland*, 44 Mass.App.Ct. 785 (1998); *MacDougall v. Acres*, 427 Mass. 363 (1998)

## REQUEST No. 29

Not every interception or eavesdropping is considered illegal.

The wiretap statute is not applicable to situations involving family matters that are better left to state law. This is because such matters are viewed as being within the ordinary course of business and therefor are not covered under the statute.

If you find that the government has failed to prove beyond a reasonable doubt that the interceptions do not fall outside of the scope of family matters, you must find the defendant not guilty.

Vieux v. Pepe, 184 F. 3d 59 (1st Cir. 1999) citing cases for the proposition that there is a split of authority on the issue of whether wiretapping in domestic situations falls within the "ordinary course of business" exception.

## INSTRUCTION NO. 30

You have received as evidence court orders from the

Massachusetts Probate Court.    These orders are not valid if

you find from the evidence that they were issued at a time when custody

proceedings were pending in another jurisdiction. The fact that these

orders were issued does not make them valid. You may use these orders

for the limited purpose of determining the state of mind of the mother of

the children.  M.G.L.C.209B sec.2(d)

Respectfully submitted,

By his attorney,

*Frances L. Robinson*

Frances L. Robinson
Davis Robinson & White, LLP
15 Court Square, Room 960
Boston, Massachusetts 02110
(617)723-7339
Fax (617)723-7331
BBO #422910