IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FILED
IN CLERKS OFFICE

2007 JAN 11  A 11:48

U.S. DISTRICT COURT
DISTRICT OF MASS.

FAZAL RAHEMAN
(PETITIONER)
V.
UNITED STATES
(RESPONDANT)

January 3 2007

CIV. NO. 05-CV-11568-PBS

**BRIEF IN SUPPORT OF APPLICATION FOR INTERVENTION OR, IN THE ALTERNATIVE PARTICIPATION AS *AMICUS CURIAE***

Dr. D.P. Lalwani
Secretary,
Institute of Human Rights
227, Jaripatka, Nagpur 440014,
INDIA
Tel: (off.) +91 712 2644297

Avinash Gupta
18, Bhagwaghar layout,
Dharampeth, Nagpur 440001
INDIA
Tel. (Off.) +91 712 2531158,
+91 712 2521160
(Cell) +91 937 310 3385
Email: adv_agupta@rediffmail.com
Counsel for Applicant

# TABLE OF CONTENTS

| | |
|---|---|
| **TABLE OF CONTENTS** | i |
| **TABLE OF AUTHORITIES** | ii-iii |
| **STATEMENT OF ORAL ARGUMENTS** | 1 |
| **STATEMENT OF ISSUES** | 1 |
| **DISCLOSURE OF INTERESTS** | 2 |
| **SUMMARY** | 4 |
| **ARGUMENT** | 7 |
| **CONCLUSION** | 11 |
| **Certificates Of Service** | 14 |

# TABLE OF AUTHORITIES

### Federal Cases

Bano v. Union Carbide Corp.,                                                         11n6
   No. 99 Civ. 16 11329 (JFK), 2003 WL 1344884 (S.D.N.Y. Mar. 18, 2003)
Bano v. Union Carbide Corp.,                                                         11n6
   273 F. 3d 120, 127 n. 5 (2d Cir. 2001)

Schlup v Delo,                                                                       8n2
   130 L Ec 2d 808, 829 (1995)

United States v Raheman,                                                             10n3
   355 F 3d 40, n15 (1st Cir 2004)

### State Cases

MacDougall v Acres, 427 Mass 563 (1998)                                              6, 11n7

Custody of Minor (No.3), 392 Mass 728 (Mass 1984)                                    6, 11n7

### Federal Constitution and Statutes

Article III                                                                          5, 6, 12

Article IV                                                                           8

Article IV §1                                                                        8

28 USC §2255                                                                         1

Fed Rules of Civil Procedure, Rule 24(a)(2)                                          1

International Parental Kidnapping Act, 18USCS1204(c)(1).                             4, 7, 9

Uniform Child Custody Jurisdiction Act (UCCJA)                                       1, 2, 3, 4, 7, 8, 9, 11, 12

## State Statutes

| | |
|---|---|
| MGL c209B | 2, 5, 6, 7, 11, 12 |
| MGL c209B §2 | 5, 7, 12 |
| MGL c209B §12 | 5, 7, 12 |
| MGL c209B §14 | 5, 7, 12 |
| MGL c208 §31 | 12 |

## International Treaties

| | |
|---|---|
| Universal Declaration of Human Rights, Articles 3, 8 & 10 | 1, 2, 7, 11 |
| International Covenant on Civil and Political Rights, Articles 3, 9 & 14. | 1 |

## Other References

| | |
|---|---|
| 4 Am Jur 2d §6 p326 (1995) | 2 |
| 4 Am Jur 2d §1, p320 (1995) | 2 |
| The Guardian and Ward Act 1890 | 5, 11n5 |
| Indian Civil Procedure Code | 5, 11n5 |
| Elizabeth Dinshaw v Arvand M. Dinshaw, (1987) 1 SCC 42 | 6 |

## STATEMENT OF ORAL ARGUMENTS

We are currently nominating a Human Rights Delegation of eminent jurists of India for visiting Massachusetts to prepare a comprehensive report on the United States judiciary's compliance with the Universal Declaration of Human Rights, Articles 3, 8 & 10 and International Covenant on Civil and Political Rights, Articles 3, 9 & 14 in the instant case. In a separate Application we are seeking time until May 1, 2007 to file such report. Our participation in the Oral Argument will definitely facilitate the issues that we are pleading. If the Honourable Court allows our intervention pursuant to Rule 24(a)(2), Fed Rules of Civil Procedure, or in the alternate grants us leave to participate as Amicus Curiae, we will be pleased to participate in the Oral Arguments.

## STATEMENT OF ISSUES

Petitioner's 28 USC §2255 Petition presents constitutional questions that were denied an appellate review on merits on the ground that they were not developed in this Court. The child custody jurisdiction issue involves a subject matter very novel to a federal court, especially in a criminal setting. Therefore, for reasons explained in the Disclosure of Interests, we will strictly limit our intervention to assisting this Court in its compliance with the principles well-established in Uniform Child Custody Jurisdiction Act (UCCJA) and consequently complying with Petitioner's fundamental human **"right to an effective remedy by the competent national tribunals" in a "public hearing by an independent and impartial tribunal"** under Universal Declaration of Human Rights, Articles 3, 8 & 10 and International Covenant on Civil and Political Rights, Articles 3, 9 & 14.

Hence the primal questions pertaining to our interest are :

Whether Petitioner's UCCJA (MGL c209B) challenge to this Court's jurisdiction is such that neither it needs to be ever addressed by this Court on merits to grant him an "effective remedy", nor deserves to be sufficiently "developed" as noticed by the Appeals Court for at least one as-of-right appellate review?

If yes, did UCCJA indeed divest this Court of jurisdiction?

Petitioner has only prayed this Court rule on merits on the serious MGL c209B limitation issues involved. We present here the seriousness and International importance of the jurisdiction question at bar.

## DISCLOSURE OF INTERESTS

"An *amicus curiae's* principal or usual function is to aid the court on questions of law, but whatever the matter with reference to which an *amicus curiae* undertakes to inform the court he or she should act in good faith, make full disclosure on the point." See 4 Am Jur 2d §6 p326 (1995). Our interest in this "friendly intervention [is] to call the court's attention to a legal matter which has escaped or might escape the court's consideration." 4 Am Jur 2d §1, p320 (1995). This appearance as friends of this Court is entirely driven by our commitment:

i) To uphold the principles that establish "**welfare of the children**" as the paramount consideration in any proceeding under any regulatory regime that affects them;

ii) To uphold the honour and dignity of a trusted democratic judiciary of the world's largest democracy.

iii) To assist the Court in remedying the denial of fundamental Human Rights to the Petitioner under the Universal Declaration of Human Rights to which both United States and India are signatories.

iv) To assist the Government of India in taking this case to the International Court of Justice in Hague as recommended by the Nagpur Family Court, if Petitioner's fundamental human right of access to "an effective judicial remedy" continue to be violated.

These interests of high public importance are in serious jeopardy in the case under review before this Honourable Court. This appearance is limited to the UCCJA issue of Petitioner's claims that impinge upon our interests in this case. We further disclose that we have no past, present or future fiscal or other pecuniary interests in any of the parties to be affected by the decision of this Court. The content of this Brief is a consensus opinion reached amongst the *Amici / Interveners* listed on the cover page of this Brief. They include renowned jurist and Human Right Activists. As a covenant in supporting the instant cause, we affirm our policy not to advocate merits of any of the litigant's factual case. For that reason, we will not endeavour into the Petitioner's pleadings of facts, and restrict ourselves to the question of law that traverse our interest in upholding the well-established International standards on **welfare of children** (hereinafter **WOC**), the Human Rights violation, and the self-esteem of an independent judiciary of the world's largest democracy.

Our area of focus is therefore very narrow and limited to the human rights consequences of jurisdictional implication of **"WOC"** and the procedurally and substantively fair adjudications – rendered by Nagpur Family Court, the Bombay High Court and the Supreme Court of India – of issues that are before this Honourable Court.

3

## SUMMARY

The fact that the issue of child custody jurisdiction is before an American criminal court in context of a custody-related criminal prosecution of a parent has absolutely no bearing on the operation of the child custody laws of a State or a Nation. If that was to be, Uniform Child Custody Jurisdiction Act (UCCJA) and its related enactments would say so or at least International Parental Kidnapping Act (IPKCA) would say so. A criminal statute encroaching on child custody subject matter would serve "**WOC**", and not *vice versa*. Therefore, to the extent a criminal statute is conflicting with "**WOC**", it will be subservient to "**WOC**". Whether a removal or retention of a child is legal or criminally illegal, UCCJA principles apply. On the contrary UCCJA provisions will never be triggered if there is no jurisdictional conflict. Conflict of jurisdiction always alleges illegality. It always applies to allegedly illegal removals. There is no separate child custody jurisdictional law for illegal removals, and there will never be one, because the criminal law serves "**WOC**" and not *vice versa*. For the same reason IPCKA itself explicitly incorporates UCCJA. See 18USCS1204(c)(1).

The problem of jurisdiction over legal and factual issues pertaining to child custody subject matter although not noticed by parties but encountered this Honourable Court during the course of criminal prosecution when the Court:

a) Determined the parental rights in accordance to the Massachusetts law,

b) Declared the provisions of Massachusetts law in the facts and circumstances of the case and

c) Made such rulings as presumed to be permitted under the Massachusetts laws.

Such jurisdictional problems were neither raised by any of Petitioner's lawyers nor ruled by the Court.

Petitioner basically challenges the District Court's authority under MGL c209B to determine parental rights, to declare Massachusetts law, and to make any such rulings, when MGL c209B beyond any doubt, divested such jurisdiction thereby extinguishing a "Case" or "Controversy" as mandated under Article III of the United States Constitution. Only minimal facts are relevant to our analysis. In fact, the facts of the case surprise us. Records establish that parties to this custody dispute have not been domiciled in Massachusetts since 1999. Records also establish that the Indian Court interviewed the children countless number of time since 1998 to assess their well being. And, in the rarest of rare gesture even the Justices of the Supreme Court of India met the children in the open Court and in their Chambers, and upheld the jurisdiction of the Nagpur Family Court. The Nagpur Family Court has exercised jurisdiction over the children and their parents since 1998 with "notice and participation of all parties to the dispute." The proceedings were initiated under The Guardian and Wards Act 1890, and conducted according to the Indian Civil Procedure Code in compliance with the well-established doctrine -- **"welfare of the minor is of paramount consideration."** See Elizabeth Dinshaw v Arvand M. Dinshaw, (1987) 1 SCC 42. Yet a criminal court makes ruling, which affect the children. More surprising is that the Court does it despite a democratic foreign court has 7 years of continuing jurisdiction over the parties and children[1], and which court in the interest of welfare of the children declines to cede its procedurally perfected jurisdiction. Our surprise transcends to shock when we review the Massachusetts statutes and cases, which explicitly and unambiguously prohibit such actions. On the contrary

---

[1] The children are now 14 and 10 years old and very much capable of asserting their own preferences.

5

the MGL c209B §2 divests the Massachusetts Courts of child custody jurisdiction, MacDougall v Acres, 427 Mass 563 (1998), and §12 and §14 grant Full Faith and Credit to the Indian custody proceedings. See Custody of Minor (No.3), 392 Mass 728 (Mass 1984). However, we do find some relief in the fact that none of the defence counsels on this case ever raised these serious concerns in the preceding years that the case has been litigated. We are therefore reluctant to shift the burden of a defence counsel over to a federal court, which has no exposure to an entirely State subject matter of custody of children to notice the defect *sua sponte*. We therefore file this Brief to clarify the core issue with perhaps a little more clarity than the Petitioner has presented. The question whether a Family Court in Massachusetts can possibly exercise subject matter jurisdiction over non-domiciliary parents, absent from the State for several years, is so overwhelmingly obvious. If the Massachusetts State Courts did not have subject matter jurisdiction, the question is the constitutional validity of a federal court's rulings on aspects of Massachusetts's law applicable to the same parties? It is interesting to note the applicant has presented his claim within the 'Live Controversy' requirement of Article III of United States Constitution. There is no doubt that a destroyed family court jurisdiction would terminate any live family law related controversy within Massachusetts, thereby adversely affecting federal jurisdiction over the same subject matter. But, we see no reason why MGL c209B, which as held by the Massachusetts Supreme Judicial Court as the "sole" source of child custody jurisdiction in Massachusetts, MacDougall v Acres, 427 Mass 563 (1998), will not be directly binding on a Massachusetts federal court independent of an Article III framework. As we have stated the "dynamism" of child custody jurisdiction serves no other master than "**WOC**", once departed from the State Court, it just cannot land up in a federal court without MGL c209B authorization. Because

IPKCA itself refers to the state law, and explicitly incorporates UCCJA, the jurisdictional provisions in **§2, §12 and §14 of MGL c209B,** of the Massachusetts version of UCCJA, are constitutionally binding on IPKCA court. We are not aware of any case, in any court, in any country, in which a court can exercise jurisdiction over determination of past or present rights of the parents over the custody of their children who are neither domiciled within the court's jurisdiction, nor connected with the State for such a long period of time.

In short the issues as we see them under the Petitioner's fundamental human rights framework boil down to:

1. Whether, an IPKCA Court should at all comply with the provisions of the Massachusetts version of UCCJA?
2. If yes, whether UCCJA did extinguish this Court's jurisdiction?
3. And, finally whether repeated denial to rule on these questions violated Petitioner's fundamental right of access to courts protected under the United States Constitution and under the Universal Declaration of Human Rights?

### ARGUMENT

In civilized societies a child custody dispute is guided by one paramount consideration "Welfare of the Child". There is no principle, law or constitution of any democratic State where "**WOC**" can be superseded by any other interest whatsoever that the State may want to protect. Petitioner presented a concise history of how <u>Uniform Child Custody Jurisdiction Act - 1968</u> and related statutes that came into existence to resolve the jurisdictional conflict cases in the United States. These early child custody judgments rendered by State Courts in the early period of the bygone 20th century, conflicted with the Full Faith and Credit Clause of

the United States Constitution, Article IV, §1. Driven entirely by the "best interest of the child" these State Courts increasingly ignored the constitutional Full Faith and Credit mandate, and exercised jurisdiction.

Petitioner's pleadings do establish that, in the United States Supreme Court cases, and in subsequent enactments, the doctrines of *res judicata*[2], Full Faith and Credit and finality or permanency of judgment may not carry their standard judicial meaning when applied to child custody cases. (See Note 2 for our disagreement with Petitioner's premise regarding a federal court's limitation in comprehending anti-res judicata nature of child custody judgments). But the point he seems to have missed in bringing home is that, all of the aforementioned judicial doctrines were bowed by case law and enactments to serve just one purpose – "**WOC**". The most important inference from these Supreme Court cases isn't that the constitutional Full Faith and Credit requirement can be ignored in child custody cases, but the "**WOC**" prevails over any Constitution to the extent that there is a conflict. The Uniform Child Custody Jurisdiction Act (UCCJA) and its offspring enactments served as the bridge to

---

[2] However, if the Petitioner implies that *anti-res judicata* nature of child custody cases is so unique that a federal court may have difficulty in comprehending its uniqueness on account of its lack of exposure to child custody subject matter, we will rather disagree. On the contrary, we believe it is very common in federal courts *habeas* practice. The all time great writ of *Habeas Corpus* was invented to challenge the res judicata of an initial judgment, which resulted in the prisoner's allegedly illegal custody. **Supreme Court "has repeatedly noted, at common law, res judicata did not attach to a court's denial of *habeas* relief". Schlup v Delo, 130 L Ec 2d 808, 829 (1995)** (citation omitted). As in *Habeas Corpus*, the Family Court, which issued the initial custody judgment, may not be the one, which reviews the subsequent custody; rather it is the court in the jurisdiction of which the subject is located. If *res judicata* were an inflexible bedrock rule, then there would be no *Habeas Corpus*. Just as it is absurd to suggest that a *Habeas* Court in Massachusetts will determine the custody of a *habeas* subject 10,000 miles away, it is a terribly frivolous proposition to have a Massachusetts Family Court decide the custody rights over subjects of child custody held legitimate in another sovereign state. Illegality of the custody is the common premise of a *habeas* petition as well as a child custody action. Illegality of custody does not alter the jurisdiction. It is still vested in the court where custody is held.

8

reconcile constitutional Full Faith and Credit with "**WOC**". In the process of building this bridge some compromises had to be struck. Obviously it was not to be "**WOC**" that could be compromised in any way, so these doctrines were recast in a uniform custody jurisdiction (UCCJA) mould. These enactments define in clear terms, when a court can exercise jurisdiction and when it cedes jurisdiction; when it grants Full Faith and Credit and when it denies credit to its own initial judgment. When United States Constitution had to make way, it will be naive to contemplate that a criminal statute can even come close.

Having said that, one very important question that we frame and try to answer: **Can any civil or criminal statute that concerns or intersects an arena involving children and their rights, promote any other interest, which may conflict with "WOC"?** The answer simply is, **NO**. The use of IPKCA by the Respondent walks that prohibited route. And, in doing so, the court rulings under challenge shake the very foundation of principles that are holding high the best interests of minors, the dignity of a sister judiciary, the fundamental covenants of Human Rights to which all the civilized nations are signatories, and the United States Constitution itself.

As we have seen, the traditional notions of *res judicata*, Full Faith and Credit and jurisdiction are not applicable to child custody subject matter. One very important aspect of these doctrines' uniqueness in child custody cases – which we think will be very helpful in this Court's analysis – is the relationship between them. The relationship between the *res judicata*, Full Faith and Credit and jurisdiction is one of **Cause and Effect**. This is more so important for a reviewing court, because a **Cause** is always diagnostic of the **Effect** and the **Effect** is always diagnostics of the **Cause**, just as HIV is diagnostic of AIDS and *vice versa*. Jurisdiction is always the Cause, and *res judicata* and Full Faith & Credit are two equal and

opposite **Effects** of jurisdiction. So, the evidence of just one of them can be used to diagnose the other two.

If a State declines *res judicata* to its own final initial judgment (which even this Court implicitly did)[3], it clearly indicates two things,

(a) lost home state jurisdiction, and,

(b) Full faith and Credit eligibility for a foreign judgment.

Conversely a grant of Full Faith and Credit to the foreign judgment (Suffolk Probate Court and even this Court granted Full Faith and Credit to the Indian judgment)[4] establishes two things,

(a) a ceded home state jurisdiction, and,

(b) lost *res judicata* force of its own judgment.

A State, or for that matter this Court, would never acknowledge and endorse a foreign custody judgment if it finds its own initial judgment *res judicata,* and finds a valid basis for its own continuing jurisdiction. Government has not claimed that the Indian proceedings were without notice and opportunity to be heard to all parties, nor does it claim

---

[3] This Court indeed held that the initial Massachusetts custody judgment of 1998 was not *res judicata* by ordering the determination of custody issues by the Middlesex Court. United States v Raheman, 355 F 3d 40,n15 (1st Cir 2004) ("so that Middlesex Probate Court (or an appropriate court) may determine child custody issues-----").

[4] This Court did grant Full Faith and Credit to the Nagpur Family Court order of December 2, 1997, holding that the defendant cannot be charged for unlawful retention because of the order which was with notice to all parties. Also, a Massachusetts State Court (Suffolk Probate Court) explicitly granted Full Faith and Credit under MGL c209B to the judgment of the Supreme Court of India.

that the Indian courts compromised with "**WOC**"[5], or that Indian Laws in general are repugnant to Government's concept of justice[6]. On the contrary, the Indian courts have invested so much of their time in determining what is best for the children, that it is impossible to find another case anywhere in the world, where Courts have had so much contact with the children. The records present more than adequate unchallenged evidence, which the Court can use to apply the jurisdiction test that we propose to the case at bar. Without going into the factual details (which is rather Petitioner's burden), the scant court records available to us indicate that government's case for Massachusetts's jurisdiction overwhelmingly fails both the tests.

It is Petitioner's fundamental right of access to courts guaranteed under the United States Constitution and under Universal Declaration of Human Rights, that warrants this Court's disposal on merits of the jurisdictional question he has raised.

## CONCLUSION

Finally, as explained earlier, if provisions of UCCJA in MGL c209B as interpreted by the Supreme Judicial Court[7] ceded Massachusetts's jurisdiction to a foreign

---

[5] The custody proceedings in India are conducted under the Guardian and Wards Act and the Indian Civil Procedure Code, statutes that were originally enacted by the British in the pre-independence era and still in force.

[6] India is the largest democracy with one of the most democratic judiciaries in the world. The United States Supreme Court has repeatedly cited the Indian judicial precedents in its decisions. Recently Second Circuit dismissed issues, which were already adjudicated by Indian courts in the famous Bhopal Gas Tragedy case. See (Bano v. Union Carbide Corp., 273 F. 3d 120, 127 n. 5 (2d Cir. 2001), Bano v. Union Carbide Corp., No. 99 Civ. 16 11329 (JFK), 2003 WL 1344884 (S.D.N.Y. Mar. 18, 2003))

[7] MacDougall v Acres, 427 Mass 563 (1998) and Custody of Minor (No.3), 392 Mass 728 (Mass 1984).

jurisdiction, that rule is binding on a Massachusetts federal court independent of an Article III framework. However, this Court may indeed see an opportunity that Article III rubric offers in adjudicating the case without having to write a very novel opinion on UCCJA that will knock out over half a century of child custody laws developed to hold **"WOC"** as supreme over the constitutional Full Faith and Credit clause. It is easier to clean up the mess created by a highly ineffective defence rather than make explicit rulings which are epoch-making in the history of child custody laws of the modern world. Thus, if the Court does find Article III "live controversy" requirement not met, simply based on the lost *res judicata* and ceded Full Faith and Credit related evidence in the court records, the Court will avoid derogating the Supreme Court precedents on child custody judgments and jurisdiction. More importantly the Court will avoid explicitly overruling Massachusetts Supreme Judicial Court determinations of the meaning of **MGL c209B §2, §12, §14 and MGL c208 §31**. It will be prudent to let Massachusetts legislatures fix if there are at all problems with these statutes.

        For all the above reasons we urge the Court;

a) grant full respect to the judgment of the Indian courts as granted by the Suffolk Probate Court of Massachusetts;

b) enforce its own grant of Full Faith and Credit (ante, note 3) and res judicata (ante, note 2) to Indian rulings;

c) and find that Massachusetts lost child custody jurisdiction under MGL c209B in 1999, thereby depriving Courts in Massachusetts of subject matter jurisdiction over determination of past, present or future parental rights of non-domiciliary parents who lost all contacts with Massachusetts since 1999.

Respectfully submitted,

January 3, 2007

*[signature]*

Avinash Gupta, Advocate, Bombay High Court, Nagpur Bench, Nagpur (India)
(Lead Counsel for Intervener / *Amicus Curiae*)
18, Bhagwaghar layout,
Dharampeth, Nagpur 440001
INDIA Tel. (Off.) +91 712 2531158

*[signature]*

Dr. D.P. Lalwani,
Secretary, Institute of Human Rights
227, Jaripatka, Nagpur 440014,
INDIA Tel: (off.) +91 712 2644297

13

## CERTIFICATE OF SERVICE

I, Avinash Gupta, hereby certify that on January 2, 2007, the copy of the brief in support of application for intervention or, in the alternative participation as amicus curiae, was served upon Mr. John McNeil, AUSA at One Courthouse Way, Suite 9200, Boston, MA 02210 by depositing it with Courier.

January 3, 2007

Avinash Gupta, Advocate

## CERTIFICATE OF SERVICE

I, Avinash Gupta, hereby certify that on January 2, 2007, the copy of the brief in support of application for intervention or, in the alternative participation as amicus curiae, was served upon Dr Fazal Raheman, by hand delivery to him at 103 Firdos Apartment, New Colony, Nagpur 440001, India.

January 3, 2007

Avinash Gupta, Advocate